UNSEALED 3/3/08 mkp

ORDERED SEALED BY COURT

FILED

08 FEB 22 AM 10: 05

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY cp DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. ALBERTO VAZQUEZ, Defendant. | Magistrate Case No. '08 MJ 0524 COMPLAINT FOR VIOLATION OF 18 U.S.C.§ 371- Conspiracy; 18 U.S.C.§ 545- Importation Contrary to Law;18 U.S.C.§ 1341- Mail Fraud; 18 U.S.C. § 2 - Aiding and Abetting |

The undersigned complainant being duly sworn states:

Count 1

Beginning at a date unknown but at least as early as August 1, 2004, and continuing up through at least February 15, 2006, within the Southern District of California, defendant ALBERTO VAZQUEZ

a. did knowingly conspire and agree together with Luis Francisco Pena Ibarra (charged elsewhere) and others known and unknown to commit offenses against the United States, to wit: to knowingly import merchandise, to wit, prescription pharmaceuticals, into the United States contrary to law, in that the merchandise was not declared at the border, as required by Title 19, United States Code, Section 1461, and the merchandise consisted of an unapproved new drug, pursuant to Title 21, United States Code, Section 331(d); in violation of Title 18, United States Code, Section 545.

//

//

//

b. to deliver for introduction into interstate commerce a drug that is misbranded, in that it is held for sale after introduction into interstate commerce and dispensed without a written prescription from a licensed practitioner, with the intent to defraud and mislead, in violation of Title 21, United States Code, Section 331(a), 331(k) and 353(b)(1) and 333(a)(2); and

c. to knowingly cause to be sent by mail or private commercial interstate carrier any mail matter, for the purpose of executing a scheme to defraud, having devised such a scheme and artifice for obtaining money by means of false representations, in violation of Title 18, United States Code, Section 1341.

As a method and means of the conspiracy, Luis Francisco Pena Ibarra would obtain prescription pharmaceuticals, such as Viagra and Cialis, manufactured outside the United States through his contacts from his pharmacy business in Mexico.

As a further method and means of the conspiracy, co-conspirators would offer these prescription pharmaceuticals for sale to individuals in the United States, by telephone and via the internet, without requiring a prior prescription, falsely representing that a physician would issue a lawful prescription after the order for pharmaceuticals was placed.

As a further method and means of the conspiracy, defendant ALBERTO VAZQUEZ and other co-conspirators would smuggle these prescription pharmaceuticals into the United States without declaring them at the border, and store them at locations within the Southern District of California.

As a further method and means of the conspiracy, defendant ALBERTO VAZQUEZ would ship the pharmaceuticals to individuals within the United States, using the U.S. Postal Service and other commercial interstate carriers.

In furtherance of this conspiracy and in order to effect the objects thereof, the following overt acts were committed within the Southern District of California:

1. On or about August 4, 2004, in San Diego, defendant ALBERTO VAZQUEZ mailed 50 Express Mail parcels, containing pharmaceuticals from Mexico, to customers throughout the United States.

2. On or about November 19, 2004, in San Diego, defendant ALBERTO VAZQEUZ mailed 89 Express Mail parcels, containing pharmaceuticals from Mexico, to customers throughout the United States.

All in violation of Title 18, United States Code, Section 371.

Count 2

On or about August 4, 2004, within the Southern District of California, defendant ALBERTO VAZQUEZ did knowingly facilitate the transportation and sale of merchandise, to wit, prescription pharmaceuticals from Mexico, knowing that the merchandise had been imported contrary to law in that the merchandise was not declared at the border, as required by Title 19, United States Code, Section 1461, and the merchandise consisted of unapproved new drugs, whose introduction into interstate commerce is prohibited by Title 21, United States Code, Section 331(d); in violation of Title 18, United States Code, Sections 545 and 2.

Count 3

On or about September 22, 2004, within the Southern District of California, defendant ALBERTO VAZQUEZ did knowingly facilitate the transportation and sale of merchandise, to wit, prescription pharmaceuticals from Mexico, knowing that the merchandise had been imported contrary to law in that the merchandise was not declared at the border, as required by Title 19, United States Code, Section 1461, and the merchandise consisted of unapproved new drugs, whose introduction into interstate commerce is prohibited by Title 21, United States Code, Section 331(d); in violation of Title 18, United States Code, Sections 545 and 2.

Count 4

On or about November 19, 2004, within the Southern District of California, defendant ALBERTO VAZQUEZ did knowingly facilitate the transportation and sale of merchandise, to wit, prescription pharmaceuticals from Mexico, knowing that the merchandise had been imported contrary to law in that the merchandise was not declared at the border, as required by Title 19, United States Code, Section 1461, and the merchandise consisted of unapproved new drugs, whose introduction into interstate commerce is prohibited by Title 21, United States Code, Section 331(d); in violation of Title 18, United States Code, Sections 545 and 2.

Count 5

On or about August 4, 2004, within the Southern District of California, defendant ALBERTO VAZQUEZ, having devised a scheme and artifice to defraud, and for obtaining money by means of false representations, did for the purpose of executing such scheme to defraud, place in a post office certain mail matter, to wit: parcels containing pharmaceuticals from Mexico, to be delivered by the Postal Service.

As part of the scheme to defraud, prescription pharmaceuticals, such as Viagra and Cialis, manufactured outside the United States would be obtained through contacts in pharmacy business in Mexico. These prescription pharmaceuticals would be offered for sale to individuals in the United States, by telephone and via the internet, without requiring a prior prescription, falsely representing that a physician would issue a lawful prescription after the order for pharmaceuticals was placed.

As a further part of the scheme to defraud, defendant ALBERTO VAZQUEZ and others would smuggle these prescription pharmaceuticals into the United States without declaring them at the border, and ship the pharmaceuticals to individuals within the United States, using the U.S. Postal Service and other commercial interstate carriers.

All in violation of Title 18, United States Code, Sections 1341 and 2.

Count 6

On or about September 22, 2004, within the Southern District of California, defendant ALBERTO VAZQUEZ, having devised a scheme and artifice to defraud, and for obtaining money by means of false representations, did for the purpose of executing such scheme to defraud, place in a post office certain mail matter, to wit: parcels containing pharmaceuticals from Mexico, to be delivered by the Postal Service.

As part of the scheme to defraud, prescription pharmaceuticals, such as Viagra and Cialis, manufactured outside the United States would be obtained through contacts in pharmacy business in Mexico. These prescription pharmaceuticals would be offered for sale to individuals in the United States, by telephone and via the internet, without requiring a prior prescription, falsely representing that a physician would issue a lawful prescription after the order for pharmaceuticals was placed.

As a further part of the scheme to defraud, defendant ALBERTO VAZQUEZ and others would smuggle these prescription pharmaceuticals into the United States without declaring them at the border, and ship the pharmaceuticals to individuals within the United States, using the U.S. Postal Service and other commercial interstate carriers.

All in violation of Title 18, United States Code, Sections 1341 and 2.

Count 7

On or about November 19, 2004, within the Southern District of California, defendant ALBERTO VAZQUEZ, having devised a scheme and artifice to defraud, and for obtaining money by means of false representations, did for the purpose of executing such scheme to defraud, place in a post office certain mail matter, to wit: parcels containing pharmaceuticals from Mexico, to be delivered by the Postal Service.

As part of the scheme to defraud, prescription pharmaceuticals, such as Viagra and Cialis, manufactured outside the United States would be obtained through contacts in pharmacy business in Mexico. These prescription pharmaceuticals would be offered for sale to individuals in the United States, by telephone and via the internet, without requiring a prior prescription, falsely representing that a physician would issue a lawful prescription after the order for pharmaceuticals was placed.

As a further part of the scheme to defraud, defendant ALBERTO VAZQUEZ and others would smuggle these prescription pharmaceuticals into the United States without declaring them at the border, and ship the pharmaceuticals to individuals within the United States, using the U.S. Postal Service and other commercial interstate carriers.

All in violation of Title 18, United States Code, Sections 1341 and 2.

And the complainant states that this complaint is based on the attached probable cause statement, which is incorporated herein by reference.

Tracey D. Taylor, Special Agent
Food and Drug Administration,
Office of Criminal Investigations

Sworn to before me and subscribed
in my presence, February 22, 2008.

UNITED STATES MAGISTRATE JUDGE

**AFFIDAVIT**

**STATE OF CALIFORNIA** )
) **ss.**
**COUNTY OF SAN DIEGO** )

On August 2, 2004, employees of Radiology Medical Group, Inc. (RMGI) contacted the U.S. Postal Inspection Service (USPIS) and advised that they had been receiving Express Mail packages returned to their address as undeliverable which had not been mailed by RMGI. When they opened the packages, they discovered prescription pharmaceuticals inside. RMGI employees provided three packages to the USPIS, all of which bore the return address of "RMGI, 6699 Alvarado, SD, CA, 92120." One package contained 160 tablets of Ativan, another contained 90 tablets of Tafil and the other contained 90 tablets of Valium. Ativan, Tafil and Valium are all prescription pharmaceuticals. The tablets were placed in plastic inside the Express Mail envelope, with no other documentation.

On August 3, 2004, a Postal Inspector identified 71 Express Mail parcels at the U.S. Post Office on Midway Drive in San Diego being mailed to various locations within the United States with a return address of "RMGI, 6699 Alvarado, SD,CA." These packages were secured, pending further contact with RMGI employees.

On August 4, 2004, the USPIS was contacted again by RMGI employees, who had received three more Express Mail parcels being returned to them as undeliverable at the 6699 Alvarado address. RMGI employees had opened the boxes and found them to contain pharmaceuticals. RMGI employees provided these parcels to the USPIS, and consented to an inspection of the 71 secured parcels with the RMGI return address.

The USPIS opened the 71 parcels and inventoried the contents, as well as the contents of the additional three parcels provided by RMGI. All contained pharmaceuticals that require a prescription by a licensed physician before these pharmaceuticals can be obtained. None of the pharmaceuticals were packaged in the manufacturer's containers, but instead were wrapped in plastic.

//

//

//

On August 4, 2004, USPIS employees identified an additional 50 Express Mail parcels with the return address of "RMGI, 6699 Alvarado, SD, CA" at the U.S. Post Office on Midway Drive in San Diego. The Express Mail stamps were purchased at the Midway Post Office at approximately 2:45 p.m., using a MasterCard. Records from the bank issuing the credit card indicated that it was issued to Alberto Vazquez, 1251 Del Sol Way, San Diego, California. The Postal Inspectors also obtained the film from the surveillance camera at the Midway Post Office that was trained on the window at the Post Office where the Express Mail parcels were purchased, which depict the purchaser as a Hispanic male, 5'10" tall, approximately 175 lbs., with short dark hair and glasses. The RMGI employees advised that they did not mail these 50 additional parcels.

The 50 parcels were opened and inventoried by the USPIS. All contained pharmaceuticals that require a prescription by a licensed physician before these pharmaceuticals can be obtained. None of the pharmaceuticals were packaged in the manufacturer's containers, but instead were wrapped in plastic. During the period from July 30, 2004, through March 30, 2005, the USPIS identified approximately 1,600 Express mail parcels with the return address of 6699 Alvarado, SD, CA.

The USPIS attempted delivery of some of the Express Mail packages. One recipient in Chandler, Arizona, advised that he had ordered pharmaceuticals from an internet pharmacy and was expecting an order. He consented to the opening of the parcel, which contained nine blister packs of 10 red tablets each, containing Cionazepan, a prescription drug. The blister pack was lettered solely in the Spanish language. The recipient provided the Postal Inspectors with documentation of his purchase of the pharmaceuticals from OnePharmacyWorld.com. Two separate recipients in Chicago, Illinois, consented to the opening of parcels containing the prescription drug Ritalin, which they had each ordered from OnePharmacyWorld.com. A recipient in San Diego advised that he ordered Xanax from OnePharmacyWorld.com, although the package contained Tafil, which was labeled solely in Spanish.

On September 15, 2004, Postal Inspectors placed an order for 100 tablets of the prescription drug Soma (carisoprodal) from the internet website OnePharmacyWorld.com, without providing evidence of a prior prescription. The website requested information on the specific medical reason for ordering the medication so that the "physician" will "know the exact nature of your medical problem in order to prescribe this medication." On September 30, 2004, Postal Inspectors received an Express mail package

at the undercover address used to place the order with OnePharmacyWorld with the return address of "6699 Alvarado, SD, CA." Inside the parcel was a ziploc bag wrapped in plastic wrap containing 100 white tablets with MP58 scored on them. There was no paperwork in the envelope and no evidence of a prescription.

On November 19, 2004, defendant Alberto Vazquez mailed 89 Express Mail parcels at the Post Office on Midway Drive in San Diego. The sale was captured on the surveillance cameras at the post office. The Express Mail parcels all bore the return address of "6699 Alvarado, SD, CA." Within the cart containing the Express Mail parcels to be mailed, Postal Inspectors discovered a small packet sealed in plastic wrap which contained twelve blister packs of Ritalin (120 tablets), which were found without an Express Mail envelope for mailing. The labeling on the Ritalin was solely in the Spanish language.

On December 8, 2005, defendant Alberto Vazquez voluntarily appeared for an interview at the USPIS offices in the post office on E Street in San Diego. Prior to any questions, Vazquez was read his Constitutional rights and signed a written waiver of those rights. Vazquez stated that he met Luis (later identified as Luis Pena), Alex and Hector at a bar in Tijuana. Luis told Vazquez he would pay him $500 week to ship medications that were smuggled across the border. Vazquez stated that he had been mailing packages for these individuals for approximately 4-5 months. Vazquez was shown the post office surveillance photos of the Hispanic male mailing the Express Mail parcels on August 4, 2004, and November 19, 2004, and identified himself as the individual in the photographs. Vazquez stated that he would sometimes use his credit card to pay for the cost of mailing, and take the receipts to Luis for reimbursement.

Vazquez recalled mailing approximately 1,000 parcels for Luis, and stated that he filled out the mailing labels on approximately 100 of the parcels. Vazquez stated that he would take the mailing trash (label backing, etc) and dispose of it in the trash in an area away from his home because he didn't want it traced to him. Vazquez stated that Luis told him that "we are planning something big" that involved Mike (later identified as Michael Griego) and the computer. Luis was going to fill orders for Mike.

On June 28, 2007, Michael Griego pled guilty to one count of conspiring to launder money, in violation of Title 18, United States Code, Section 1956(h), relating to the proceeds from an internet pharmacy. At the time of his plea, Griego acknowledged under oath that between December 12, 2002

and May 2006, Griego conspired with other to sell prescription pharmaceuticals via the internet without a valid prescription. Griego used the domain name OnePharmacyWorld.com and others to facilitate the sale of these prescription drugs.

Griego stated that on or about March 20, 2004, he met with Luis Pena and others in La Jolla, California to begin an online pharmacy business venture. They agreed that Pena would supply prescription pharmaceuticals from Mexico for Griego to sell via his internet pharmacy websites. Between April 2004, and March 2005, Griego deposited a total of $219,800 in various bank accounts as directed by Pena, as payment for prescription pharmaceuticals from Mexico.

Tracey D. Taylor
Special Agent
Food and Drug Administration,
Office of Criminal Investigations

Sworn to before me and subscribed
in my presence, February 22nd 2008.

UNITED STATES MAGISTRATE JUDGE